UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

JOHN NIBLO,

                           Plaintiff,

           against

UBS GLOBAL ASSET MANAGEMENT
(AMERICAS) INC., DILLON READ
CAPITAL MANAGEMENT LLC AND UBS
SECURITIES LLC,

                      Defendants.

-------------------------------------------------------------------

Case No.  1:11-cv-04447-DAB

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

I.      PRELIMINARY STATEMENT ...............................................................1

II.      STATEMENT OF RELEVANT FACTS ...................................................2

     A.      The Separation Program and the Supplemental Program ......................2

         1.      The Separation Program ..............................................2

         2.      The Supplemental Program.........................................3

     B.      Administration of the Plan .....................................................4

     C.      Plaintiff's employment and the closure/reintegration of DRCM............4

     D.      Plaintiff's claim for Plan benefits ...........................................5

     E.      Plaintiff's Complaint.............................................................7

III.      STANDARD OF REVIEW .......................................................................8

     A.      Motion to Dismiss................................................................8

IV.      ARGUMENT ..............................................................................................9

     A.      The Complaint should be dismissed because Plaintiff failed to exhaust the Plan's Administrative remedies ...........................................9

     B.      Plaintiff is time-barred from now filing an administrative appeal.........14

     C.      Plaintiff's Section 510 claim fails to state a legally cognizable cause of action ...15

         1.      Plaintiff has not alleged any adverse employment action intended to interfere with the attainment of Plan benefits............................................16

         2.      Plaintiff's Section 510 claim duplicates his claim for benefits.................18

         3.      Plaintiff's has no right to benefits under the Plan .....................................19

     D.      Plaintiff's Section 510 claim is time-barred .........................................20

E.      Plaintiff's claim for compensatory damages must be dismissed ...........................21

CONCLUSION ...........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004)..................................................................................22

*Amato v. Bernard,*
618 F.2d 559 (9th Cir. 1980)) ..................................................................11

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)................................................................................8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................8, 9

*Bernikow v. Xerox Corp. Long- Term Disability Income Plan,*
517 F. Supp. 2d 646 (W.D.N.Y. 2007) ..................................................14

*Billinger v. Bell Atlantic,*
240 F. Supp. 2d 274 (S.D.N.Y. 2003)....................................................23

*Blake v. H-2A & H-2B Voluntary Employees' Beneficiary Ass'n,*
952 F. Supp. 927 (D. Conn. 1997)..........................................................17

*Blessing v. J.P. Morgan Chase & Co.,*
394 F. Supp. 2d 569 (S.D.N.Y. 2005)..............................................16, 17

*Cappiello v. NYNEX Pension Plan,*
No. 92 Civ. 3896, 1994 WL 30429 (S.D.N.Y. Feb. 2, 1994) ................12

*Ceres Partners v. GEL Assocs.,*
918 F.2d 349 (2d Cir. 1990)....................................................................20

*Cerick v. MTB Bank,*
No. 97 Civ 2719 (KMW), 1998 WL 391126 (S.D.N.Y. July 13, 1998)................20

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002)..................................................................2, 8

*Conkright v. Frommert,*
130 S. Ct. 1640 (2010)..............................................................................13

*Davenport v. Harry N. Abrams, Inc.*,
    249 F.3d 130 (2d Cir. 2001)................................................................................12

*Degrooth v. Gen. Dynamics Corp.*,
    837 F. Supp. 485 (D. Conn. 1993),
    *aff'd*, 28 F.3d 103 (2d Cir.), *cert. denied*, 513 U.S. 1043 (1994) .....................16, 17

*Denton v. First Nat'l Bank of Waco, Texas*,
765 F.2d 1295 (5th Cir. 1985) ........................................................................11

*Dister v. Cont'l Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988)..........................................................................17

*Feldman v. Am. Mem'l Life Ins. Co.*,
    196 F.3d 783 (7th Cir. 1999) ..........................................................................19

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)........................................................................................13

*Graham v. City of Albany*,
    Civ. No. 1:08-CV-892 (RFT), 2009 WL 4263510 (N.D.N.Y. Nov. 23, 2009) ......21

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) .......................................................................................22

*Greifenberger v. Hartford Life Ins. Co.*,
    131 F. App'x 756 (2d Cir. 2005) ....................................................................9, 11

*Hanly v. Powell Goldstein, L.L.P.*,
    290 F. App'x. 435 (2d Cir. 2008) ......................................................................8

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)..............................................................................8

*Hill v. City of New York*,
    45 F.3d 653 (2d Cir. 1995)................................................................................2

*Holowecki v. Fed. Express Corp.*,
    440 F.3d 558 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008) .....................................2

*Hoodack v. IBM, Inc.*,
    202 F. Supp. 2d 109 (S.D.N.Y. 2002)...........................................................20, 21

*Kendall v. Fisse*,
    149 F. App'x 19 (2d Cir. 2005) ......................................................................17

*Kennedy v. Empire Blue Cross & Blue Shield*,
    989 F.2d 588 (2d Cir. 1993)............................................................................11

*Klotz v. Xerox Corp.*,
    332 F. App'x 668 (2d Cir. 2009) ....................................................................11

*Lee v. Burkhart*,
    991 F.2d 1004 (2d Cir. 1993)........................................................................22

*Majka ex rel. Mingari v. Utica City School District*,
    247 A.D. 2d 845, 668 N.Y.S.2d 831 (4th Dep't 1998)..........................................21

*Massachusetts Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ...................................................................................22

*McNinch v. Goodyear Tire and Rubber Co., Inc.*,
    No. 03-CV-369S, 2005 WL 735963 (W.D.N.Y. Mar. 30, 2005) ...............................9, 11, 12

*Merkent v. SI Bank & Trust Spring 2004 Severance Benefit Plan*,
    No. 05 CV 2449, 2006 WL 898086 (E.D.N.Y. April 5, 2006).................................12

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ...................................................................................22

*Moore v. Fox Chevrolet*,
    No. 5:06-CV-42, 2007 WL 925721 (N.D.N.Y. Mar. 26, 2007) ...........................9, 12

*Mugno v. Societe Internationale de Telecommunications Aeronautiques, LTD*,
    No. 05-cv-2037 (DRH)(ARL), 2007 WL 316572 (E.D.N.Y. Jan. 30, 2007) ..................9, 12

*Owens v. Storehouse, Inc.*,
    984 F.2d 394 (11th Cir. 1993) ......................................................................19

*Pagan v. NYNEX Pension Plan*,
    52 F.3d 438 (2d Cir. 1995)...........................................................................13

*Pelosi v. Schwab Capital Markets, L.P.*,
    462 F. Supp. 2d 503 (S.D.N.Y. 2006)................................................11,18, 22, 23

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ...................................................................................18, 21

*Sandberg v. KPMG Peat Marwick, LLP*,
    111 F.3d 331 (2d Cir. 1997)........................................................................16, 20

*Sanfilippo v. Provident Life & Cas. Ins. Co.*,
    178 F. Supp. 2d 450 (S.D.N.Y. 2002)...............................................................14

*Schultz v. Texaco, Inc.*,
    127 F. Supp. 2d 443 (S.D.N.Y. 2001)................................................................21

*Straus v. Prudential Employee Savings Plan*,
253 F. Supp. 2d 438 (E.D.N.Y. 2003) ...................................................................20

*Thomas v. Verizon*,
No. 02 Civ. 3083RCCTHK, 2004 WL 1948753 (S.D.N.Y. Sept. 2, 2004),
*aff'd*, 2005 WL 3116752 (2d Cir. 2005) ...............................................................12

*Tirone v. New York Stock Exchange, Inc.*,
No. 05 Civ. 8703 (WHP), 2006 WL 2773862 (S.D.N.Y. Sep. 28, 2006) .............17

*Varity Corp. v. Howe*,
516 U.S. 489 (1996).................................................................................................18

*Weinberg v. Mizuho Capital Markets Corp.*,
No. 03 Civ. 2612 (SAS), 2003 WL 22462022 (S.D.N.Y. Oct. 30, 2003) .............16

*Weinreb v. Hospital for Joint Diseases Orthopaedic Institute*,
285 F. Supp. 2d 382 (S.D.N.Y. 2003)......................................................................23

*Weir v. Holland & Knight*,
No. 05 Civ. 9358LTSAJP, 2007 WL 1815494 (S.D.N.Y. June 25, 2007) .........9, 20

*Wharton v. Duke Realty, LLP*,
467 F. Supp. 2d 381 (S.D.N.Y. 2006)...................................................................2, 23

## STATUTES

ERISA  § 29 U.S.C. § 1001, *et seq.* ...................................................................... *passim*

ERISA § 3(1), 29 U.S.C. § 1002(1) .............................................................................2

ERISA § 502, 29 U.S.C. § 1132..........................................................................1, 21

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ............................................ *passim*

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)......................................................18, 23

ERISA § 503, 29 U.S.C. § 1133 ...................................................................................9

ERISA § 510, 29 U.S.C. § 1140 ........................................................................ *passim*

Fed.R.Civ.P. 12(b)(6)............................................................................................1, 8

## OTHER AUTHORITIES

*Ronald Garner v. Dillon Read Capital Management, LLC, & UBS Global Asset Management (U.S.) Inc.*,
JAMS Ref. No. 1425003064 (Oct. 6, 2009) ................................................................10

UBS Global Asset Management (Americas) Inc. ("UBS GAM"), Dillon Read Capital Management LLC ("DRCM"), and UBS Securities LLC (collectively, "Defendants"), by their attorneys Proskauer Rose LLP, move pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of the Complaint for failure to state a claim.

## I.    PRELIMINARY STATEMENT

In this lawsuit arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), John Niblo ("Plaintiff") alleges that he was wrongfully denied a discretionary "Special Payment" under the UBS GAM Separation Program's Supplemental Program for Certain Employees of DRCM (the "Plan").

Defendants seek an order dismissing Plaintiff's complaint on the following grounds:

- Plaintiff's First Claim, seeking payment of benefits under an ERISA plan and alleging a violation of Section 502 of ERISA, 29 U.S.C. § 1132, must be dismissed because Plaintiff has failed to exhaust administrative remedies under the Plan, as required by the express terms of the Plan and by ERISA;

- Plaintiff's Second Claim, alleging Defendants violated Section 510 of ERISA, 29 U.S.C. § 1140, by intentionally interfering with his attainment of Plan benefits, must be dismissed because it (1) fails to allege the requisite elements of a Section 510 claim; and (2) is time-barred; and

- Plaintiff's claim for compensatory damages must be dismissed because such damages are not available under ERISA.

1

## II.      STATEMENT OF RELEVANT FACTS[1]

Although Defendants specifically deny all allegations of wrongdoing alleged in the Complaint, for purposes of this Motion only, Defendants accept the allegations of the Complaint as true. *Hill v. City of New York,* 45 F.3d 653, 657 (2d Cir. 1995).

### A.      The Separation Program and the Supplemental Program

#### 1.    The Separation Program

UBS GAM is the sponsor and plan administrator of the UBS GAM Separation Program (the "Separation Program") and of the Supplemental Program for Certain Employees of DRCM (the "Supplemental Program").  Compl. ¶ 36; Exhs. A and B,[2] respectively.  The Supplemental Program is part of the Separation Program.  *See* Exh. B, p. 1.  The Separation Program and Supplemental Program are referred to collectively herein as "the Plan."

The Plan is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1), and is governed by ERISA.  Compl. ¶¶ 1, 37, 60, 66; Exh. A, p. 10.

The Separation Program was adopted for and provides severance pay and other benefits to employees in the United States of UBS GAM, DRCM, and other related entities, whose employment is involuntarily terminated and who meet the eligibility requirements of the program. Exh. A, p. 1.  The Separation Program is effective with respect to employees who receive written notification of involuntary termination on or after June 1, 2003.  Exh. A, p. 10.

---

[1]      The Statement of Relevant Facts is based on the allegations of the Complaint and documentary evidence referred to in or integral to the Complaint.  The Court may consider the documents referenced in the Complaint, and the documents on which Plaintiff's claims are based, on this motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008); *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 387 (S.D.N.Y. 2006) (in deciding motion to dismiss, court may consider full text of documents quoted in complaint or that plaintiff possessed or knew about and relied upon in bringing suit).

[2]      *See* Declaration of Adam Lupion, to which all Exhibits referenced herein are attached.

Among other requirements for eligibility for benefits under the Separation Program, the employee must be selected for involuntary termination, must not terminate voluntarily or be terminated for cause, must timely sign a Separation Agreement and General Release, and must not be offered a comparable position or a position with a purchaser or successor entity in connection with a merger, sale, or divestiture of UBS GAM.  Exh. A, pp. 1-3.

Employees who satisfy the eligibility requirements of the Separation Program are eligible for severance pay, medical and dental benefits, career transition benefits, employee assistance benefits, and, in certain circumstances based on the date of termination, a special payment.[3]  Exh. A, pp. 3-4.  The amount of severance benefits payable is based on an employee's employment level and years of service.  Compl. ¶ 36; Exh. A, p. 4.

### 2.   The Supplemental Program

UBS GAM adopted the Supplemental Program for certain employees of DRCM whose employment was being terminated involuntarily between May 3, 2007, and September 30, 2007. Exh. B, p. 1.  In addition to being involuntarily terminated during that time period, to be eligible for benefits under the Supplemental Program, the employee was required to satisfy the eligibility requirements of the Separation Program.  Exh. B, p. 1.  The Supplemental Program provides that individuals who meet these eligibility requirements "***may*** be paid a special payment as determined in the ***sole discretion of DRCM Management***."  Exh. B, p. 2 (emphasis added).  This discretionary special payment under the Supplemental Program is referred to herein as the "Special Payment."

---

[3]    The "special payment" provided for in the Separation Program is not the same as the "Special Payment" sought by Plaintiff under the Supplemental Program.

### B.    Administration of the Plan

The Plan designates UBS GAM as the Program Administrator, Exh. A. p. 10, and designates a committee to make decisions with respect to the Plan's implementation and operation (the "Severance Committee").   The Severance Committee is granted authority to delegate any of its responsibilities.   Exh. A., p. 8.   The Plan expressly grants to the Severance Committee or its delegate "the discretionary authority and responsibility to determine eligibility for benefits and the amount of such benefits, and to construe the terms of the Program," and further provides that the Severance Committee's "determinations and constructions … will be final, binding and conclusive as to all parties, unless found by a court of competent jurisdiction to be arbitrary and capricious."  Exh. A, p. 9.

The Plan sets forth the procedures to be followed for submitting questions or claims for benefits.   Exh. A, p. 9.   The Plan provides that if a claim for severance benefits is denied, the claimant may within 60 days submit to the Severance Committee a request for review, and may submit written comments, documents, records, and other information relating to the claim.   Exh. A, p. 9. The Plan provides that the Severance Committee's decision on such review shall be final, binding and conclusive on all persons unless found by a court to be arbitrary and capricious. Exh. A, p. 10.

### C.    Plaintiff's employment and the closure/reintegration of DRCM

Plaintiff was hired by UBS Securities LLC ("UBS") in April 2001.  Compl. ¶ 9.  In June 2005, UBS AG (the parent of Defendant UBS GAM) established DRCM, an alternative investment management business.  Compl. ¶ 11.  On or about April 3, 2006, Plaintiff and other individuals were transferred from UBS to DRCM.  Compl. ¶ 13.  On May 3, 2007, UBS AG announced its decision to close DRCM.  Compl. ¶ 30.

By letter of June 22, 2007, Plaintiff was advised that in connection with the decision by UBS AG to re-integrate DRCM into UBS Investment Bank, UBS AG was permanently closing DRCM's offices as of December 31, 2007.  Compl. ¶ 33; Exh. C.  Plaintiff was advised that, although he might be offered employment with another UBS entity prior to his separation from DRCM, regardless of any such offer of employment, his last day of employment with DRCM would be within 14 days of August 28, 2007.  Compl. ¶ 34; Exh. C .

On or about March 16, 2009, Plaintiff commenced an arbitration against UBS Global Asset Management (U.S.) Inc. and UBS Securities LLC ("Respondents") by filing a Statement of Claim before the dispute resolution arm of the Financial Industry Regulatory Authority ("FINRA").  Plaintiff sought, among other things, recovery of a separation payment pursuant to ERISA.  Respondents denied all material allegations and moved to dismiss the Statement of Claim in accordance with the FINRA Code of Arbitration Procedure.  The Panel denied Respondents' motion.  At the outset of the hearing, and after all discovery had been completed, Respondents again moved to dismiss Plaintiff's claims on the grounds that FINRA lacked jurisdiction to hear the dispute – an argument that Respondents expressly preserved throughout the pendency of the FINRA proceeding.  After Respondents presented their arguments in support of their motion, Plaintiff announced that he no longer opposed Respondents' motion.  Accordingly, on or about January 28, 2011, the Panel ordered that "Claimant's claims are dismissed for lack of subject matter jurisdiction without prejudice to Claimant's right to bring his claim in a proper forum."  (*See* Exh. H).

**D.     Plaintiff's claim for Plan benefits**

By letter of June 26, 2007, DRCM notified Plaintiff that his last day of employment with DRCM would be August 25, 2007, and that in connection with this termination, he was eligible

to receive certain severance benefits under the Separation Program.  Compl. ¶¶ 35, 38; Exh. D.

DRCM provided copies of the Separation Program and the Supplemental Program with this

letter.  Exh. D.  DRCM advised Plaintiff that, among other benefits, he was eligible for a lump

sum payment equal to 20 weeks of his current base salary.  Compl. ¶ 52; Exh. D.   Plaintiff was

not offered the discretionary Special Payment under the Supplemental Program.  Compl. ¶ 41;

Exh. D.[4]

In a letter from his counsel dated September 26, 2007 addressed to the Severance

Committee, Plaintiff challenged the decision by DRCM and UBS AG not to provide Plaintiff

with a Special Payment under the Supplemental Program.  Compl. ¶ 45; Exh. E.  Plaintiff's

counsel asserted that Plaintiff was entitled to receive the Special Payment, that other similarly

situated employees were offered the Special Payment, and that Plaintiff had been "unfairly and

improperly deprived of a key benefit" under the Separation Program.  Exh. E.

By letter of December 21, 2007, the Severance Committee advised Plaintiff that his

request for a Special Payment was denied.  Compl. ¶ 48; Exh. F.  The Severance Committee

advised that it had determined to deny the request in an exercise of the discretion granted to the

Severance Committee under the Plan.  Exh. F.  The Severance Committee further advised that it

had determined that DRCM management had appropriately exercised its discretion, as granted

under the Supplemental Program, in declining to offer a Special Payment to Plaintiff "based on

the substantial losses in [his] trading book."  Exh. F.

---

[4]     Plaintiff availed himself of the administrative review process in the first instance by seeking an extension
of time to submit his claim to the Severance Committee.  Under the terms of the Plan, Plaintiff's request for
benefits would have been due on or about August 11, 2007 -- 45 days after he was first presented with a
Separation Agreement and General Release.  Exh. A, p. 9.  Plaintiff's request for an extension was granted,
and he submitted his request for benefits to the Severance Committee on September 26, 2007 -- well
beyond the 45-day period provided under the Plan.

The Severance Committee advised Plaintiff that he had the right to obtain a review of the denial of his claim by requesting such review within 60 days.  The Severance Committee further advised that if the claim were to be denied following such second-level review, Plaintiff would then have the right to bring a civil action under ERISA.  Exh. F.

Plaintiff does not (and cannot) allege that he submitted a request for review of the denial of his claim for a Special Payment under the Supplemental Program.

### E.    Plaintiff's Complaint

Plaintiff initiated this lawsuit to challenge the discretionary denial of his request for the Special Payment under the Supplemental Program.  Plaintiff alleges that as a result of his termination of employment with DRCM, he became eligible to receive benefits under the Plan, and was offered a severance payment under the Separation Program.  Compl. ¶ 38.  Plaintiff further alleges that he met the eligibility requirements of the Supplemental Program, and thus (ignoring DRCM management's discretion) claims to have been entitled as a matter of right to a Special Payment thereunder.  Compl. ¶ 39.  Plaintiff acknowledges receipt of the letter denying his claim, dated December 21, 2007.  Compl. ¶ 48.  This letter informed Plaintiff of his right to appeal the denial of his claim, and advised that if his claim were again denied, he would then have the right to bring a civil action under ERISA.  Exh. F.  In his Complaint, Plaintiff does not allege that he requested a review of the denial of his claim nor, more broadly, does he assert that he satisfied the Plan's exhaustion requirements, a condition precedent for bringing this suit.

Plaintiff asserts that the Severance Committee in its December 21, 2007 letter, explained that the Special Payment was denied due to "substantial losses" in Plaintiff's trading book, and vaguely alleges that the decision "was based on motives other than those specified" in the December 21, 2007, letter.  Compl. ¶ 48-50.

Plaintiff asserts a claim for benefits arising under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) (First Claim), and a claim asserting that Defendants interfered with his attainment of benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140 (Second Claim).

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss

When considering a Rule 12(b)(6) motion, the Court accepts as true well-pleaded allegations of fact. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Dismissal is appropriate if the facts alleged in a complaint do not state a claim that is plausible on its face. *Id.* Although a plaintiff's well-pleaded allegations are entitled to a presumption of truth, conclusory allegations are not. *Iqbal*, 129 S. Ct. at 1951; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x. 435, 440 (2d Cir. 2008).

Although Plaintiff alleges in a conclusory fashion that he was legally harmed by Defendants, he fails to support these legal conclusions with sufficient relevant facts showing that he is entitled to relief from Defendants. Even applying a liberal construction and accepting the factual allegations in the Complaint as true, Plaintiff fails to satisfy minimum pleading

requirements. Indeed, the allegations he asserts in support of both purported causes of action lack a required element and thus "have not nudged [Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569. *See Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756, 758 (2d Cir. 2005) (affirming dismissal of claim for ERISA benefits due to plaintiff's failure to exhaust administrative remedies); *Mugno v. Societe Internationale de Telecommunications Aeronautiques, LTD*, No. 05-cv-2037 (DRH)(ARL), 2007 WL 316572, at *7 (E.D.N.Y. Jan. 30, 2007) (holding that where plaintiff has not alleged that he exhausted all available administrative remedies after denial of disability benefits claim, there are not facts on the record to support claim for relief under ERISA, and ERISA claim must be dismissed); *Weir v. Holland & Knight*, No. 05 Civ. 9358LTSAJP, 2007 WL 1815494, *2 (S.D.N.Y. June 25, 2007) (dismissing ERISA Section 510 claim because it is time-barred). Thus, all claims asserted against Defendants must be dismissed.

## IV.   ARGUMENT

### A.   The Complaint should be dismissed because Plaintiff failed to exhaust the Plan's Administrative remedies.

Section 503 of ERISA, 29 U.S.C. § 1133, requires every welfare and pension plan to contain an internal appeal and claims review procedure. In compliance with Section 503 and the regulations thereunder, the Plan clearly articulates the procedures for claims administration and review. The Plan provides that if a claim for severance benefits is denied, the claimant has the right to submit to the Severance Committee a request for review within 60 days, and may submit written comments, documents, records, and other information relating to the claim.[5]  Exh. A, p.

---

[5]  The Plan language stating that a claimant "may" submit a request for review does not mean that exhaustion is optional. The Plan language merely recognizes that after being advised of the initial denial of a claim, a claimant may choose to do nothing further, and is not required to challenge the initial decision. However, the Plan language does not excuse exhaustion of the plan's administrative procedures if the claimant wishes to file a lawsuit. *See Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756, 758 (2d Cir. 2005) (inclusion of term "may" does not excuse duty to exhaust before filing suit); *Moore v. Fox Chevrolet,* No.

9.  Plaintiff received copies of the Plan.  Compl. ¶¶ 35, 38 (acknowledging receipt of letter of June 26, 2007); Exh. D, p.1 (letter of June 26, 2007, noting attachment as exhibits of Separation Program and Supplemental Program).   Further, in its December 21, 2007, letter informing Plaintiff that his request for a Special Payment under the Supplemental Program was denied, the Severance Committee expressly advised Plaintiff that, in accordance with the Plan, he had a right to obtain a review of the denial by submitting a written request within 60 days.  Exh. F.  The letter further stated: "If your claim is again denied following such review, you have the right to bring a civil action under Section 502(a) of" ERISA.  Exh. F.

Plaintiff acknowledges receipt of the letter to which the Plan was attached, Compl. ¶¶ 35, 38, as well as the letter in which he was advised that he needed to request review of the denial before he could file a lawsuit, and was informed of the applicable time limit.  Compl. ¶ 48, Exh. F.  However, nowhere in his Complaint does Plaintiff allege that he made any effort to request a review or file an appeal of the denial in accordance with the Plan's administrative review procedures and the express, written instruction that he received.  Nor does the Complaint contain any broader statement that Plaintiff exhausted the applicable administrative process before bringing suit.  As Plaintiff failed to exhaust the review and appeal procedures prior to filing this lawsuit, as required by the Plan and by ERISA, his claim for benefits must be dismissed.

---

5:06-CV-42, 2007 WL 925721, at *3 (N.D.N.Y. Mar. 26, 2007) ("[T]he term 'may' in a plan's review procedures does not excuse a plaintiff from the duty to exhaust administrative review."); *McNinch v. Goodyear Tire and Rubber Co., Inc.,* No. 03-CV-369S, 2005 WL 735963, at *4 (W.D.N.Y. Mar. 30, 2005) (enforcing required exhaustion of plan remedies where applicable plan stated:  "If your temporary layoff or furlough becomes permanent, you *may* make written application to the Corporate Personnel Department to receive the Severance Pay Benefit….").  *See also Ronald Garner v. Dillon Read Capital Management, LLC, and UBS Global Asset Management (U.S.) Inc.,* JAMS Ref. No. 1425003064 (Oct. 6, 2009) (Crane, Arb.) (attached to the Declaration of Adam Lupion as Exhibit G) (rejecting argument that use of the term "may" in connection with the review procedure afforded by the Separation Program excused claimant from exhaustion requirement).

In accordance with ERISA's requirement under Section 503 that benefit plans provide for "full and fair review" of denied claims, courts in the Second Circuit require the exhaustion of administrative review procedures as a prerequisite to a suit to recover ERISA benefits. *Greifenberger*, 131 F. App'x at 758.  Indeed, it is "firmly established" in the Second Circuit that to assert a claim for benefits under ERISA, a plaintiff must demonstrate that he exhausted the plan's administrative remedies, including all avenues of appeal.  *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (affirming dismissal of complaint for failure to exhaust administrative remedies).  The exhaustion requirement is intended to:

> (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*

*Id.* at 594 (citing *Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295 (5th Cir. 1985)).  Further, as a matter of policy, the exhaustion requirement is intended "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."  *Id.* (citing *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)).

Consistent with the principle that "federal courts are not free to substitute their judgment for that of the plan administrator," "federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan absent a determination by the plan administrator."  *McNinch v. Goodyear Tire & Rubber Co. Inc.*, No. 03-CV-369S, 2005 WL 735963, at *3 (W.D.N.Y. Mar. 30, 2005) (internal citations omitted).  *See also Klotz v. Xerox Corp.*, 332 F. App'x 668, at *1-*2 (2d Cir. 2009) (affirming dismissal of plaintiff's claim for

11

disability benefits for failure to utilize the second level of the company's appeals process); *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133-34 (2d Cir. 2001) (affirming dismissal of claims for failure to exhaust administrative remedies, and noting that plaintiff was required to exhaust even if she was ignorant of the proper claims procedure); *Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503, 509 (S.D.N.Y. 2006) ("To maintain a claim pursuant to ERISA § 502(a)(1)(B), a plaintiff must demonstrate . . . that he exhausted administrative remedies."); *Thomas v. Verizon*, No. 02 Civ. 3083RCCTHK, 2004 WL 1948753, *3 (S.D.N.Y. Sept. 2, 2004) (to exhaust a claim for benefits, a claimant must pursue all administrative remedies provided by the plan), *aff'd*, 2005 WL 3116752 (2d Cir. 2005); *Cappiello v. NYNEX Pension Plan*, No. 92 Civ. 3896, 1994 WL 30429, at *5 (S.D.N.Y. Feb. 2, 1994) (dismissing complaint for failure to exhaust administrative remedies where plaintiff was provided with a copy of the plan summary prior to initiating action but failed to avail herself of plan's review procedures); *Mugno*, 2007 WL 316572, at *7 (holding that where assertion that plaintiff exhausted all administrative remedies is "glaringly missing" from complaint, ERISA claim must be dismissed); *Moore v. Fox Chevrolet*, No. 5:06-CV-42, 2007 WL 925721, at *4 (N.D.N.Y. Mar. 26, 2007) (dismissing plaintiffs' claims because plaintiffs "failed to comply with the Plan's appeal procedure, and consequently, did not exhaust the Plan's administrative review procedures"); *Merkent v. SI Bank & Trust Spring 2004 Severance Benefit Plan*, No. 05 CV 2449, 2006 WL 898086, at *2 (E.D.N.Y. April 5, 2006) (dismissing plaintiff's claim for severance based on failure to exhaust administrative remedies when company's plan included a provision that allowed for appeal and plaintiff failed to file an appeal); *McNinch*, 2005 WL 735963, at *4-*6 (dismissing plaintiff's claim for severance benefits because plaintiff did not follow the

employer's requirement under the plan of making a written or formal claim for benefits under the plan).

Plaintiff's failure to exhaust the Plan's administrative remedies not only deprives the Court of the administrative record that would otherwise have been developed with respect to his claims, but also deprives the Severance Committee of the right to deferential review of the Plan's determination, a right that has been recognized as integral to the promotion of important ERISA policies. *Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010). The Plan expressly grants to the Severance Committee or its delegate "the discretionary authority and responsibility to determine eligibility for benefits and the amount of such benefits, and to construe the terms of the Program," and further provides that the Severance Committee's "determinations and constructions … will be final, binding and conclusive as to all parties, unless found by a court of competent jurisdiction to be arbitrary and capricious." Exh. A, p. 9. As a result, the Severance Committee's determinations may be overturned only if found to be arbitrary and capricious. *Conkright*, 130 S. Ct. at 1646 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). *See also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). As the Supreme Court explained, deference to the administrator's decision "preserves the 'careful balancing' on which ERISA is based. Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator . . . . [and] serves the interest of uniformity, helping to avoid a patchwork of different interpretations of a plan . . . ." *Conkright*, 130 S. Ct. at 1649 (noting the importance of exhaustion of administrative remedies).

13

By ignoring the requirement to exhaust administrative remedies, Plaintiff infringed on policies designed to protect the rights of the Plan and the interests of the Court in an efficient and fair judicial process for administering claims under ERISA.  Accordingly, Plaintiff's claim for benefits should be dismissed.

### B.    Plaintiff is time-barred from now filing an administrative appeal.

The Plan requires that a claimant file an appeal by making a written request for review within 60 days after a claim is denied.  Plaintiff never filed an appeal, and any appeal at this time is time-barred because it is beyond the Plan's 60-day appeal period.  Failure to exhaust timely all available administrative remedies is grounds for dismissal.  *See Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F. Supp. 2d 646, 653 (W.D.N.Y. 2007) (granting summary judgment to defendants where plaintiff was afforded the opportunity to have the denial of his disability benefits reviewed, but failed to do so within required 60 days, and time to appeal had expired); *Sanfilippo v. Provident Life & Cas. Ins. Co.*, 178 F. Supp. 2d 450, 458 (S.D.N.Y. 2002) (holding that where plaintiff was informed of termination of benefits, right to seek review, and applicable time limits for review, his failure to timely pursue administrative remedies barred ERISA claim).

Plaintiff was fully informed about his right to request review, and about the deadline for submitting such request, but never appealed the denial of his claim.  Because Plaintiff failed timely to appeal the initial claim denial and failed to exhaust the Plan's administrative procedures, he is forever barred from doing so.

Overwhelming precedent mandates that a claim for benefits be dismissed unless the plaintiff has first exhausted the plan's administrative remedies.  Plaintiff has failed as a matter of

law to adequately plead exhaustion of the Plan's administrative remedies, and his First Claim must be dismissed.

### C.      Plaintiff's Section 510 claim fails to state a legally cognizable cause of action.

ERISA Section 510, 29 U.S.C. § 1140, provides in relevant part that it is "unlawful … to discharge, . . . discipline, or discriminate against a participant . . . for the purpose of interfering with the attainment of any right . . . under [an employee benefit] plan . . . . "

Plaintiff's Section 510 claim should be dismissed because it is fatally defective as a matter of law for at least the following reasons:  (1)  Plaintiff fails to allege that Defendants took an adverse employment action against him with the intent to avoid providing him with ERISA benefits; rather, Plaintiff characterizes the denial of benefits itself as the alleged unlawful act under Section 510, even though he was indisputably offered Separation Program benefits *as a result of an involuntary termination*; (2) Plaintiff seeks relief identical to that sought in his First Claim, namely, the payment of $600,000 – not coincidentally the dollar value of the Special Payment he alleges was improperly denied – and, therefore, because Plaintiff's claim for the Special Payment is a claim for benefits adequately remedied under ERISA Section 502(a)(1)(B), the Section 510 claim is entirely duplicative and should be dismissed for that reason alone; and (3) Plaintiff cannot state a claim that he was entitled to the benefit he seeks because the Special Payment is expressly discretionary under the Plan terms.

In these circumstances, Plaintiff's Section 510 claim is a transparent attempt to recast his Section 502(a)(1)(B) claim for Plan benefits – benefits that he is barred from receiving by virtue of his failure to exhaust.  Indeed, Plaintiff's attempt to recast his claim in this regard would turn Section 510 action on its head.  This repackaging of his flawed benefits claim as one arising under Section 510 fails to state a claim for relief and should, therefore, be dismissed.

### 1. Plaintiff has not alleged any adverse employment action intended to interfere with the attainment of Plan benefits.

Like other anti-discrimination legislation, Section 510's purpose is to prohibit discrimination affecting the employer-employee relationship. *See, e.g.*, *Degrooth v. Gen. Dynamics Corp.*, 837 F. Supp. 485, 489 (D. Conn. 1993) (granting motion to dismiss Section 510 claim where loss of benefits did not result from adverse employment action), *aff'd*, 28 F.3d 103 (2d Cir.), *cert. denied*, 513 U.S. 1043 (1994). As the Second Circuit has noted, "[S]ection 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing employees in order to keep them from obtaining vested pension rights.'" *Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 334 (2d Cir. 1997) (citation omitted).

Plaintiff's Complaint is bereft of any allegation that Defendants took an adverse employment action against him with the intent to avoid providing him with ERISA benefits. In fact, Plaintiff asserts the opposite – he seeks severance benefits triggered by his involuntary termination of employment, and he was offered Separation Program benefits *as a result of that involuntary termination*. Plaintiff cannot now claim that the same involuntary termination that made him eligible for severance benefits violated Section 510 because it interfered with his attainment of the discretionary Special Payment. Courts have uniformly dismissed Section 510 claims in these circumstances. *See Weinberg v. Mizuho Capital Markets Corp.*, No. 03 Civ. 2612 (SAS), 2003 WL 22462022 (S.D.N.Y. Oct. 30, 2003) (dismissing Section 510 claim alleging employer terminated plaintiff to avoid paying severance benefits because this allegation was inconsistent with plaintiff's assertion that he was promised severance pay upon termination; employer's "decision to terminate [plaintiff] cannot have interfered with the attainment of his rights under the [severance plan], because [plaintiff's] termination would have triggered, not interfered with, his right to receive severance benefits."); *Blessing v. J.P. Morgan Chase & Co.*,

394 F. Supp. 2d 569, 582 n.5 (S.D.N.Y. 2005) (elimination of plaintiff's position during merger did not give rise to inference of intentional interference with ability to collect severance pay, because that job elimination was the event that would have made plaintiff eligible for severance pay in the first place).

Indeed, Plaintiff's allegation that the denial of the Special Payment was somehow unlawful does not state a cognizable Section 510 claim absent the required nexus to an adverse employment action specifically intended to interfere with the attainment of benefits.  Where an allegedly adverse employment action occurs in the context of a corporate reorganization, a Section 510 claim fails, because the plaintiff cannot show unlawful motive.  *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir. 1988).  *See also Kendall v. Fisse,* 149 F. App'x 19, 21 (2d Cir. 2005) (affirming district court's dismissal of Section 510 claim alleging employer terminated plaintiff to prevent him from receiving severance benefits because plaintiff conceded that he received severance benefits and failed to show employer had specific intent to engage in prohibited conduct); *Tirone v. New York Stock Exchange, Inc.*, No. 05 Civ. 8703 (WHP), 2006 WL 2773862, at *4-*5 (S.D.N.Y. Sep. 28, 2006) (granting motion to dismiss Section 510 claim in absence of adverse employment action); *Blessing*, 394 F. Supp. 2d at 583 (Section 510 requires more than interference with attainment of benefits; the interfering employer must "*discharge, discipline … or discriminate* against a participant … for the purposes of interfering with the attainment" of benefits) (emphasis in original); *Blake v. H-2A & H-2B Voluntary Employees' Beneficiary Ass'n*, 952 F. Supp. 927, 933-36 (D. Conn. 1997) (Section 510 was designed to preclude conduct "which fundamentally change[s] the employer-employee relationship"); *Degrooth*, 837 F. Supp. at 489 (declining to extend Section 510 to decisions

regarding allocation of benefits because to state claim under Section 510, plaintiff must allege adverse employment action taken against him).

2.      **Plaintiff's Section 510 claim duplicates his claim for benefits.**

Moreover, in his Section 510 claim, Plaintiff seeks the payment of $600,000 to remedy the alleged violation, *i.e.*, a payment of money equal in value to the ERISA benefit he alleges was improperly denied.  Because this claim states a claim for benefits remediable under ERISA Section 502(a)(1)(B), the Section 510 claim is duplicative and must be dismissed.

ERISA Section 502(a)(1)(B) permits a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  This is the only ERISA provision under which Plaintiff may assert a claim for benefits, and this ERISA remedy is exclusive.  *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53 (1987) (ERISA's civil enforcement remedies were intended to be exclusive).

Plaintiff in his Second Claim recasts his claim for benefits as a claim under Section 510, which is remediable via ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Section 502(a)(3) is limited to suits for equitable relief only where no other ERISA relief is available.  Where a claim is remediable under § 502(a)(1)(B), the Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996), held that relief under § 502(a)(3) is inappropriate.  That is because Section 502(a)(3) "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations [of ERISA] that § 502 does not elsewhere adequately remedy."  *Id.,* at 512.  *See Pelosi*, 462 F. Supp. 2d at 514 (where plaintiff seeks identical relief for Section 510 claim [via Section 502(a)(3)] as for denial of benefits claim, and both causes allege the same conduct and seek the same remedy, the Section 510 claim is duplicative and must be dismissed).

Plaintiff's misguided Section 510 claim must be dismissed because Plaintiff fails to allege the requisite elements of the claim, and, in addition, because the claim is duplicative of, and a mere attempt to rename, a claim for benefits under Section 502(a)(1)(B).

### 3.    Plaintiff has no right to benefits under the Plan.

As a matter of law, specific intent to deprive a plaintiff of his right to ERISA benefits cannot be established if the plaintiff has no entitlement to the benefits in question.  *Owens v. Storehouse, Inc.*, 984 F.2d 394, 399 (11th Cir. 1993).  *See also Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999) (where plaintiff was not eligible for disability benefits at time of discharge, court dismissed Section 510 claim, declining to consider allegations of employer's motivation).  The reason for this is simple – there can be no claim that an employer took action with the specific intention of depriving a plaintiff of the right to an ERISA benefit if there is no right to such benefit to begin with.

Here, Plaintiff alleges in a conclusory fashion that he was entitled to the Special Payment by virtue of his general entitlement to severance benefits.  Compl. ¶ 39.  However, this conclusory assertion is contradicted by the unambiguous terms of the Supplemental Program. The Supplemental Program clearly states that if an employee satisfies the eligibility requirements for the Supplemental Program, he "*may* be paid a special payment *as determined in the sole discretion of DRCM Management*."  Exh. B, p. 2 (emphasis added).  The Supplemental Program unambiguously reserves to DRCM Management the authority to determine whether to offer the Special Payment to an eligible employee.  By the express terms of the Plan, satisfaction of the eligibility requirements ***does not*** guarantee receipt of a Special Payment.  Here, in an exercise of the express discretion afforded to it by the Plan, DRCM Management determined Plaintiff was not entitled to a Special Payment.  As Plaintiff cannot demonstrate any entitlement to the Special

Payment, he fails to state a Section 510 claim.  In these circumstances, the motivation behind the benefit denial is irrelevant.  *See Straus v. Prudential Employee Savings Plan*, 253 F. Supp. 2d 438, 449 (E.D.N.Y. 2003) (holding that, in Section 510 claim, where plaintiffs' conclusory allegations that they had a "right" conferred by the plan were clearly refuted by exhibits to the complaint, plaintiffs could not satisfy pleading requirements and avoid dismissal) (citations omitted).

### D.      Plaintiff's Section 510 claim is time-barred.

Even assuming, *arguendo,* that Plaintiff has stated a viable Section 510 claim, it must be dismissed because it is time-barred.

ERISA does not contain a statute of limitations for actions under Section 510.  Thus, the court applies the statute of limitations of the state cause of action most analogous to the Section 510 claim.  *See Sandberg* , 111 F.3d at 333; *Hoodack v. IBM, Inc.*, 202 F. Supp. 2d 109, 113 (S.D.N.Y. 2002); *Cerick v. MTB Bank*, No. 97 Civ 2719 (KMW), 1998 WL 391126, at *2 (S.D.N.Y. July 13, 1998).  Because this case is brought in a New York forum, New York law applies.  *Sandberg,* 111 F.3d at 333; *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 353 (2d Cir. 1990) (analogous state statute of limitations would be adopted by reference to pertinent laws of forum state).  The Second Circuit has determined that the most analogous New York statute of limitations for Section 510 claims is the two-year statute of limitations under Section 120 of the New York Workers' Compensation statute.  *Sandberg*, 111 F.3d at 336.  *See also* Weir, 2007 WL 1815494, at *2 (two-year statute of limitations governs Section 510 claims brought in New York).

Plaintiff learned as early as June 26, 2007, that he was not going to receive the Special Payment (Compl. ¶ 41, Exh. D), was terminated effective August 25, 2007 (Compl. ¶¶ 35, 38;

Exh. D), and was informed on December 21, 2007, that his claim was denied by the Severance

Committee (Compl. ¶ 48; Exh. F).  Plaintiff filed this suit on June 29, 2011, more than two years

after any of the potentially relevant events.[6]  Thus, the claim is time-barred.[7]

> **E.  Plaintiff's claim for compensatory damages must be dismissed.**

Plaintiff asserts that he is "entitled to compensatory damages" in the amount of $600,000

with respect to both his claim for benefits and his claim alleging interference with his attainment

of benefits.  Compl. ¶ 64, and Prayer for Relief.  To the extent Plaintiff seeks these damages in

addition to, or as a substitute for, his claim of entitlement to the Special Payment benefit in the

amount of $600,000, such claim must be dismissed because compensatory damages are not

available under ERISA.

Section 502, the civil enforcement provision of ERISA, 29 U.S.C. § 1132, provides the

exclusive remedies for violations of ERISA.  *See, e.g., Pilot Life*, 481 U.S. at 55-56.  Specifically,

Section 502(a) allows a participant or beneficiary to bring a civil action:

> (1) . . . (B) to recover benefits due to him under the terms of his plan,
> to enforce his rights under the terms of the plan, or to clarify his
> rights to future benefits under the terms of the plan;
>
> *  *  *

---

[6]   A Section 510 cause of action ordinarily accrues upon notification of the challenged employment action, not upon deprivation of benefits.  *Hoodack v. IBM, Inc.*, 202 F. Supp. 2d 109, 113 (S.D.N.Y. 2002).  *See also Schultz v. Texaco, Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (Section 510 action alleging plaintiffs were wrongly classified as independent contractors accrued at time of classification).  Here, Plaintiff claims the denial of benefits violated Section 510.  However, regardless of the date chosen as the date of accrual – whether date of termination, denial of benefits, or denial of claim for benefits – the claim is time-barred.

[7]   The statute of limitations applicable to Plaintiff's Section 510 claim was not tolled by the FINRA arbitration, as Plaintiff did not assert a Section 510 claim during the course of the proceedings.  *See, e.g., Graham v. City of Albany*, Civ. No. 1:08-CV-892 (RFT), 2009 WL 4263510, at *5 (N.D.N.Y. Nov. 23, 2009) (arbitration of medical claims with insurance company did not toll statute of limitations for constitutional claims before the court); *Majka ex rel. Mingari v. Utica City School District*, 247 A.D. 2d 845, 668 N.Y.S.2d 831, 832 (4th Dep't 1998) (arbitration proceeding did not toll statute of limitations because it was not instituted to resolve the controversy before the court).

> (3) . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

Plaintiff's claim for benefits is asserted under Section 502(a)(1)(B). Plaintiff's claim asserting interference with his attainment of benefits in violation of Section 510 is brought under Section 502(a)(3). *Pelosi*, 462 F. Supp. 2d at 513; *Wharton,* 467 F. Supp. 2d at 390. Neither of those provisions permits the recovery of compensatory damages, and the Supreme Court has rejected arguments that ERISA's fundamental goals allow a court to fashion remedies not found in the statute's text. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260-62 (1993) (vague notions of a statute's basic purposes cannot overcome specific provisions of ERISA, which is a complex and detailed statute). Similarly, the Supreme Court has held that courts cannot fashion "implied" remedies under ERISA's remedial provisions:

> The six carefully integrated civil enforcement provisions found in [ERISA] . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. . . . [W]here a statute expressly provides a particular remedy or remedies, a court must be wary of reading others into it.

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-147 (1985) (emphasis in original). *See also Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004) (compensatory and punitive damages are beyond the limited remedies authorized by ERISA, which remedies are "an inherent part of the 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans"); *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002) (the only relief available under ERISA is equitable relief; plaintiffs are not entitled to *any* monetary damages).

Courts within this Circuit have uniformly held that compensatory damages are not recoverable under ERISA. *See Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir. 1993) (money

damages are unavailable under ERISA Section 502(a)(3), the provision under which a participant may sue to obtain appropriate equitable relief to remedy violations of ERISA); *Wharton*, 467 F. Supp. 2d at 390 (holding that where plaintiff seeks recovery of dollar value of benefits she claims she is owed, this is a claim for compensatory damages not recoverable in a Section 510 action, even if plaintiff labels the claim as one for "equitable restitution"); *Pelosi,* 462 F. Supp. 2d at 513 (holding that plaintiff's claim under Section 510 seeking compensation equal to denied severance pay sought precisely the type of remedy the Supreme Court in *Great West* rejected as impermissible under Section 502(a)(3)); *Weinreb v. Hospital for Joint Diseases Orthopaedic Institute*, 285 F. Supp. 2d 382, 388 (S.D.N.Y. 2003) (holding that request for injunction directing defendant to enroll decedent in life insurance plan was "thinly disguised attempt" to recover the benefits to which plaintiff was not entitled, and such compensatory damages are not recoverable under Section 502(a)(3)); *Billinger v. Bell Atlantic*, 240 F. Supp. 2d 274, 287 (S.D.N.Y. 2003) (holding that claims for compensatory damages in connection with claim for ERISA disability benefits are outside scope of ERISA's exclusive civil enforcement scheme).

As ERISA plainly does not provide for the recovery of compensatory damages, Plaintiff has no cognizable claim for damages in connection with the First and Second Claims.  Thus, such claims must be dismissed as a matter of law.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' motion and dismiss Plaintiff's Complaint in its entirety.


Dated: New York, New York
      July 21, 2011                       Respectfully submitted,


                                   PROSKAUER ROSE LLP

                                   By:   /s/ Lloyd B. Chinn

                                 Lloyd B. Chinn
                                 Adam M. Lupion

                                 Eleven Times Square
                                 New York, NY 10036-8299
                                 (212) 969-3000
                                 lchinn@proskauer.com
                                 alupion@proskauer.com

                                 Heather G. Magier
                                 650 Poydras Street
                                 Ste. 1800
                                 New Orleans, LA 70130-6146
                                 (504) 310-4088
                                 hmagier@proskauer.com

                                 *Attorneys for Defendants*